IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD PLATEL, | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| vs. | : | |
| | : | |
| RAYMOND COLORAN, | : | |
| THE DISTRICT ATTORNEY OF THE | : | |
| COUNTY OF PHILADELPHIA, AND | : | |
| THE ATTORNEY GENERAL OF | : | |
| THE COMMONWEALTH OF PA, | : | |
| Respondents. | : | No. 04-1000 |

Gene E.K. Pratter, J.          Memorandum and Order          August 15, 2006

Presently before the Court is the Amended Petition for Writ of Habeas Corpus (the "Petition") filed by Petitioner Edward Platel, a state prisoner, pursuant to 28 U.S.C. § 2254.  The Petition was reviewed by Magistrate Judge Linda K. Caracappa and a Report and Recommendation was prepared, to which Mr. Platel filed several objections.

FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case arose on September 29, 1993, when Petitioner Edward Platel shot and killed Brian Johnson at Johnson's residence.  Mr. Platel originally pled guilty to murder in the third degree, but later withdrew his plea and decided to proceed to trial.  A jury trial was held in the Philadelphia Court of Common Pleas before the Honorable John J. Poserina and on April 30, 1999, a jury found Mr. Platel guilty of murder in the first degree and possession of an instrument of crime.  The court imposed a sentence of life imprisonment.

The Pennsylvania Superior Court denied Mr. Platel's direct appeal on May 11, 2001.  See Commonwealth v. Platel, 778 A.2d 1246 (Pa. Super. Ct. 2001).  Mr. Platel did not file a petition for Allowance of Appeal to the Pennsylvania Supreme Court.  On July 21, 2001, Mr. Platel filed

an amended PCRA petition, which was denied without opinion.  The Pennsylvania Superior Court affirmed the trial court judgment without opinion on July 1, 2003.  <u>Commonwealth v. Platel</u>, 832 A.2d 542 (Pa. Super. Ct. 2003).  Mr. Platel filed his initial petition for a Writ of Habeas Corpus on March 8, 2004.  Later that month, Mr. Platel's counsel withdrew and new counsel entered his appearance.  New counsel filed an Amended Petition for Habeas Corpus on or about May 10, 2004, in which the following six claims were raised:

1.     The prosecutor engaged in extreme misconduct by (a) misstating facts at trial; (b) making argument based on facts not contained in the record; (c) representing to the jury that the district attorney personally represented Mr. Johnson; (d) improperly linking Mr. Johnson with the American justice system; (e) improperly telling the jury that Mr. Platel had more rights than did Mr. Johnson; (f) engaging in <u>ad hominem</u> attacks; and (g) improperly implying that Mr. Platel was a racist and that this was a partial motive for the killing.  Mr. Platel argues that these facts cumulatively amount to a violation of Mr. Platel's rights under the Fourteenth Amendment;

2.     The prosecutor and investigating officer deprived Mr. Platel of his right to counsel because a detective visited Mr. Platel at home during the evening recess of the trial on the evening before Mr. Platel was to testify, outside the presence of Mr. Platel's counsel, and the prosecutor cross-examined Mr. Platel in court with respect to the contents of the statements he made, thereby violating his rights under the Sixth Amendment;

3.     Mr. Platel's conviction for murder in the first degree was not supported with

sufficient evidence of malice and specific intent;

4.      Mr. Platel was denied effective assistance of counsel because (a) Mr. Platel's trial

counsel unreasonably failed to file a motion to suppress Mr. Platel's extrajudicial

statement to the police which was made in violation of Mr. Platel's rights under

the Sixth Amendment; (b) trial counsel failed to conduct a reasonable

investigation and call necessary witnesses with respect to the timing of the

discovery of Mrs. Platel's pregnancy; (c) trial counsel unreasonably failed to

object to the prosecutorial misconduct, inadmissible evidence, and erroneous jury

instructions; (d) Mr. Platel was prejudiced by his trial counsel's deficient

performance; and (e) the state court unreasonably denied Mr. Platel's

ineffectiveness of counsel claims.

5.      The police failed to preserve the 911 tapes and transcripts, as well as Mr.

Johnson's clothing, amounting to a violation of Mr. Platel's rights under the Sixth

and Fourteenth Amendments and the state court unreasonably determined that Mr.

Platel was not entitled to a retrial because of this error; and

6.      The trial court violated Mr. Platel's rights under the Fourteenth Amendment by

improperly admitting testimony that Mr. Platel had an affair with an underage

woman.

An Answer to the Petition was filed by Respondents on or about September 16, 2004, and Mr.

Platel filed a Reply to the Answer on or about October 25, 2004.[1]   On November 8, 2004, Mr.

Platel filed a motion to expand the record to include the entire state court transcript, and this

---

[1]  Mr. Platel requested and was given an extension of time within which to file his reply.

motion was granted on November 9, 2004.  On November 16, 2004, Magistrate Judge Linda K. Caracappa submitted a Report and Recommendation that the Petition for Habeas Corpus be denied and dismissed, and that no certificate of appealability be granted.  Two days later, on November 18, 2004, Mr. Platel moved to have included the records in a corrected appendix to his reply included in the record.[2]  On December 1, 2004, Mr. Platel filed his Objections to the Report and Recommendations, and the Respondents filed a Response in Opposition to the Objections on December 10, 2004.

In her Report and Recommendations, Magistrate Judge Caracappa found that claims 1, 2, 4(b) and 5 were procedurally defaulted and should therefore be dismissed.  The substance of the remainder of the claims, including claims 3, 4(a), 4(c), 4(d), 4(e), 4(f) and 6 were considered and found to be without merit.

## DISCUSSION

Mr. Platel sets for 10 objections to the Report and Recommendation outline.  Each objection will be separately addressed.

A.   **Objection I - Magistrate Judge Caracappa Erred in finding that Mr. Platel did not demonstrate that a miscarriage of justice would occur for claims that were found to be procedurally defaulted.**

Mr. Platel argues that Magistrate Judge Caracappa erred because to the extent that claims 1, 2, 4(b) and 5 were procedurally defaulted because such default was excused by Mr. Platel's factual showing that his conviction resulted from a miscarriage of justice which would have excused any procedural default.  In this objection, Mr. Platel argues that such default should be

_____

[2]  The Court has granted this Motion, which will be reflected by an order separate from this Memorandum and Opinion.  As will be reflected herein, these documents were considered in the Court's decision.

4

excused.

A defendant's failure to comply with a State's procedural rule may be excused if the defendant can demonstrate cause, prejudice or a miscarriage of justice.  McCleskey v. Zant, 499 U.S. 467, 493-94 (1991).  In this case, Mr. Platel specifically argues that a fundamental miscarriage of justice should be found here because the following evidence was either presented or should have been presented at trial to establish his actual innocence: (1) testimony that Mr. Platel and Mr. Johnson had been friends for over two years; (2) evidence, in the form of an affidavit of a family friend who was not called to testify at trial, that there was no recent dispute between Mr. Platel and Mr. Johnson and that the prosecution's theory supporting motive that Mr. Platel had discovered that Mr. Johnson had impregnated his wife was factually impossible;[3] (3) evidence presented at trial that Mr. Platel had no intention to shoot or fight with Mr. Johnson because Mr. Platel was not upset when he went to Mr. Johnson's residence, but was rather trying to convince William Bilbay, a person who worked for Mr. Platel and lived with Mr. Johnson, to report to work that day; (4) evidence that the particular model of gun owned by Mr. Platel was capable of malfunctioning by "doubling" or "slam firing," which could result in two shots being unintentionally fired; (5) an affidavit of Mr. Platel's former wife that Mr. Platel's gun had accidentally discharged as recently as the morning of the shooting, and that she had shared that information with an investigator but was never called to testify as to that fact; (6) that all eyewitnesses who gave statements immediately after the shooting consistently stated that they

---

[3] Mr. Platel asserts, and Respondents do not appear to disagree, that Mrs. Platel did not discover that she was pregnant until after Mr. Johnson had been killed.  An affidavit of Cynthia Thornton, Esquire, dated June 29, 2004, was submitted by Mr. Platel as an Exhibit to his Reply in Support of the present petition for habeas relief.

heard only one shot, a fact that would be consistent with doubling; (7) that Mr. Platel fully

cooperated with the investigating police officers, consenting to have his car searched and waiving

his Miranda rights; (8) that the investigating officers lost critical pieces of evidence, including the

clothing that Mr. Johnson was wearing, the preliminary hearing transcript, the homicide file and

the tapes of transcripts of two 911 telephone calls reporting the incident;[4] and (9) that Mr. Platel

has consistently maintained his innocence and asserted that the shooting was accidental.  Mr.

Platel specifically asserts that Magistrate Judge Caracappa failed to meet "the required fact

intensive inquiry" required under Schlup v. Delo, 513 U.S. 298 (1995).  Objection at 6.

     Under the standard set forth in Schlup,[5] a habeas petitioner claiming that his or her actual

---

[4]  Mr. Platel asserts that a medical expert testified at trial that the wounds Mr. Johnson
suffered were consistent with slam, or double, firing, but that he needed to examine the clothing
Mr. Johnson was wearing to further confirm his opinion.

[5]  In Schlup, Lloyd Schlup, an inmate in a Missouri prison, was tried, convicted and
sentenced to death for the murder of another inmate.  Schlup, 513 U.S. at 305.  After exhausting
his state-law post-conviction remedies, Mr. Schlup filed a pro se petition for a writ of habeas
corpus in which he asserted that his trial counsel was ineffective for failing to call witnesses who
could have established Mr. Schlup's innocence.  The pro se petition was declared procedurally
barred by the district court, and the denial was affirmed by the appellate court on a finding that
there was insufficient record evidence to find that Mr. Schlup's trial counsel had been
ineffective.

More than three years later, Mr. Schlup was represented by counsel who filed a second
federal habeas corpus petition.  Id. at 307.  The second petition, which was supported by
"numerous affidavits from inmates attesting to Schlup's innocence," included claims that: (1)
Mr. Schlup was actually innocent of the murder, (2) trial counsel was ineffective for failing to
interview alibi witnesses; and (3) the State had failed to disclose critical exculpatory evidence.
Id.  The second petition was again denied on the grounds that the papers supporting the petition
and other various filings of Mr. Schlup had not provided adequate cause for failing to raise the
new claims in a more timely manner, and the dismissal was again affirmed by the circuit court.
Id. at 309.  The Supreme Court granted certiorari to consider the standard that should be applied
in determining a "miscarriage of justice" claim where a petitioner's claim of innocence is
procedural rather than substantive.

innocence was obscured by constitutional error at trial, such as prosecutorial misconduct or ineffective assistance of counsel, may have a procedurally barred claim considered only if the petitioner presents evidence that establishes "sufficient doubt about [the petitioner's] guilt to justify the conclusion that [the punishment] would be a miscarriage of justice *unless* [the petitioner's] conviction was the product of a fair trial." Schlup, 513 U.S. at 316. Schlup presents a narrow exception to procedural default, and applies only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup, 513 U.S. at 321.

To establish a claim of "actual innocence" under Schlup sufficient to support a finding of a miscarriage of justice, a petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup, 513 U.S. at 327. Although a petitioner in this position must make a stronger showing than that needed to establish prejudice, he need not establish his position by "clear and convincing evidence." Id. Such a claim will be considered credible if it is supported with "new reliable evidence," such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" that was not presented at trial. Schlup, 513 U.S. at 324. The Schlup Court further instructed that

---

The Court began its analysis by stating that Mr. Schlup could obtain a review of his constitutional claims "only if he falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" Schlup, 513 U.S. at 314-15. Thus, Mr. Schlup's claim of innocence was not, in and of itself, a basis for relief, but was rather "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Id. at 315 (quoting Herrera v. Collins, 506 U.S. 390, 404 (1993)). The Court went on to note that a claim of innocence accompanied by an assertion of constitutional error at trial may allow a petitioner to argue the merits of his underlying claims if a petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." Schlup, 513 U.S. at 316.

"[i]t is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do." Id. at 329. No consideration may be given to procedurally barred claims absent a petitioner establishing that in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. Id.

The Court concludes, as Magistrate Judge Caracappa did, that Mr. Platel has not presented sufficient new evidence that would excuse the procedural default with respect to claims 1, 2, 4(b) and 5.[6] First of all, none of the facts recited by Mr. Platel to support his claim of actual innocence present new evidence which could not have been considered by the jury or the Commonwealth courts.[7] Mr. Platel's claims with respect to prosecutorial misconduct, which encompass claims 1, and 2, were clearly known at the time he was convicted, and Mr. Platel does not present any new evidence to suggest facts with respect to the prosecution that have been subsequently or recently discovered. Although Mr. Platel now presents, in the form of affidavits, testimony regarding the timing of Rebecca Platel's pregnancy and testimony that was not elicited from Rebecca Platel at trial, given the other evidence upon which his conviction was based, the Court cannot conclude that a fundamental miscarriage of justice occurred in the absence of this

---

[6] Mr. Platel also challenges the conclusion that each of these claims was procedurally defaulted. The Court will consider those objections separately herein.

[7] The Court further notes that the transcript of the "Sixty Minutes" episode which purports to evidence the possibility that the murder weapon was of a variety that was prone to misfiring is dated March 20, 1994 – five years prior to the trial in this case. The Court further notes that this possibility was explored at trial, as Mr. Platel cites to the trial transcript regarding the gun's potential for malfunctioning.

evidence.[8]

Likewise, the absence of the recorded 911 calls and the clothing Mr. Johnson was wearing at the time he was killed do not lead to the conclusion that had this evidence been available, no rational juror could have convicted Mr. Platel of first degree murder. Although the jury did not hear the actual recorded 911 call, it did hear testimony from both Mr. Platel and William Bilbay about what was said on those calls, and how the shooting was communicated to the police. Additionally, although the clothing was not available for Mr. Platel's expert to review, there was evidence and information available to all experts from the autopsy conducted on Mr. Johnson. While it is understandable that an expert witness would want to have examined the clothing, it is a speculative leap to conclude that had that examination occurred, the evidence would have definitively fallen in Mr. Platel's favor.

In the absence of evidence from which the Court could conclude that reasonable jurors would have decided the case differently, the Court declines to conclude that Magistrate Judge Caracappa erred with respect to finding that there is no miscarriage of justice that would warrant excusing the procedural default of claims 1, 2, 4(b) and 5. Therefore, this objection to the Report and Recommendation shall be rejected.

---

[8] The Court notes that Mr. Platel also included, in a corrected appendix of exhibits, an affidavit from his present counsel in which counsel attests that he was unsuccessful in an attempt to ascertain the race of the prospective jurors who were stricken by the district attorney. Corrected App. at Ex. 7, ¶ 3. Counsel also notes that the victim, Brian Johnson, was African American and that the defendant, Edward Platel, is Caucasian. Corrected App. at Ex. 7, ¶ 4. This document is presented in support of Mr. Platel's assertion that the misconduct on the part of the prosecutor included racial overtones. While something as serious as the profiling of potential jurors based on race could be found to constitute prosecutorial misconduct that might rise to the level of a miscarriage of justice, there is not sufficient evidence presented here to support such a claim.

B.     **Objection No. II - Magistrate Judge Caracappa Erred by Failing to Conduct Factual Development as to the Miscarriage of Justice Exception**

Mr. Platel next argues that in order to draw a conclusion as to whether, given the evidence presented, a reasonable jury would have convicted him, the facts he presented demand further inquiry by way of an evidentiary hearing.[9]  Therefore, Mr. Platel argues that Magistrate Judge Caracappa erred in not conducting such a hearing.

In support of the argument that Mr. Platel presents facts that are sufficient to warrant a hearing to assess whether a miscarriage of justice has occurred, Mr. Platel presents the following evidence: (1) an affidavit of Cynthia A. Thornton, a family friend of the Platels who attests that prior to the trial Mr. Platel's wife confided that she learned that she was pregnant only after Mr. Platel had been arrested, that Mr. Johnson and his family were friends of the Platels and that the affiant was sequestered as a witness at trial but was never called to testify; (2) an affidavit of Rebecca Codespoti, Mr. Platel's wife at the time of the shooting, who attests that she witnessed the gun that was involved in the shooting accidentally firing shortly before the shooting of Mr. Johnson took place and that she would have been willing to testify to that fact at trial but was not questioned about this issue; (3) a Philadelphia Police Department Homicide Investigation Interview Record of Officer Peter Marcellino, dated September 29, 1993, in which

---

[9]  Mr. Platel relies on <u>Cristin v. Brennan</u>, 281 F.3d 404, 420 (3d Cir. 2002), for the proposition that a district court is authorized to hold an evidentiary hearing to further explore facts relating to a defendant's assertion of actual innocence.  The Court notes that in <u>Cristin</u>, the defendant was not arguing that he was actually innocent of the crime, and thereby the satisfaction of the requirements of 28 U.S.C. § 2254(e) did not apply.  In this case, Mr. Platel is asserting that he is actually innocent of the crime of which he was convicted and seeks to establish that constitutional errors at trial should excuse his procedural default of certain of his claims.  Thus, although the premise that a district court could conduct such a hearing is established, the circumstances in <u>Cristin</u> were far different than those here.

Officer Marcellino recounts his investigation of the shooting; (4) a Philadelphia Police Department Homicide Investigation Interview Record of William C. Bilbay, dated September 29, 1993, in which Mr. Bilbay, who was the only witness to the shooting, states that he believed Mr. Platel came to Mr. Johnson's house to find out why Mr. Bilbay was not reporting to work that day; (5) the statement of Mr. Platel, taken September 29, 1993, in which Mr. Platel states that the shooting was an accident; and (6) an affidavit of Keith G. Bleil dated January 16, 2002, in which the affiant states that he received a call from Mr. Bilbay on the morning of September 29, 1993, telling the affiant not to pick Mr. Bilbay up for work that day.

None of this evidence, taken either separately or as a whole, undermines the Court's confidence with respect to the trial of this matter such that an evidentiary hearing is warranted. Virtually all of this evidence was available at the time of trial and, therefore, is not new evidence that would call into question the deliberated verdict of the jury. Moreover, the failure to call Mr. Bleil as a witness was addressed by the Pennsylvania Superior Court with respect to Mr. Platel's appeal of the denial of his Post Conviction Relief Act petition, which correctly concluded that such evidence would have been cumulative.[10]

Because all of this evidence was available at the time of Mr. Platel's trial, Mr. Platel's

---

[10]  Because this basis for an evidentiary hearing was considered by the PCRA court, the Court is bound by the requirements of 28 U.S.C. § 2254(d), which states that a writ of habeas corpus cannot be granted unless the adjudication on the merits by the state court (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  In this case, the Pennsylvania Superior Court found no error in the absence of testimony by Mr.Bleil, and concluded that his testimony would have been cumulative to evidence already presented.  Commonwealth v. Platel, No. 2234 EDA 2002 (Pa. Superior Ct. 2003) (non-precedential decision) at 9.

request for a hearing regarding this material effectively requests that this Court, acting under jurisdiction of the federal habeas corpus statute, to reconsider existing evidence.  The Court declines this invitation, as it is not the role of a federal habeas court to re-try a defendant who is unhappy with the evidence that was presented at his original trial.

C.   **Objection Nos. III, V and VI - The First and Second Claims for Relief are Not Procedurally Defaulted and Habeas Relief Should Have Been Granted with Respect to These Claims**

In his first claim for relief, Mr. Platel alleges that his conviction is constitutionally infirm because the prosecutor engaged in extensive misconduct during the trial.  Mr. Platel alleges that this misconduct included (1) informing the jury that the flag in the courtroom "stands for a man who is not in the courtroom" (i.e., the murder victim); (2) conveying to the jury that the defendant was afforded more constitutional rights than the victim and that the prosecutor was the victim's lawyer; (3) suggesting that the government did not have sufficient funds, as did the defendant, to pay the former medical examiner who performed the autopsy to be a witness; (4) suggesting to the jury that Mr. Platel had instructed Mr. Bilbay to tell a certain "story" that Mr. Platel had given him when he testified; (5) implicitly suggesting to the predominantly African American jury that the homicide was racially motivated by presenting that Mr. Platel was upset that the victim, who was African American, was socializing with Mr. Platel's wife; and (6) stating, during closing argument that Mr. Platel believed that Brian Johnson was having an illicit affair with Mr. Platel's wife and that Mr. Johnson had impregnated her.  Mr. Platel argues that these improper statements, some of which suggest facts that were not presented as evidence, were highly improper and served to deny Mr. Platel his constitutional right to a fair trial.

In his second claim for relief, Mr. Platel argues that the investigating officer and the

prosecutor violated Mr. Platel's Sixth Amendment right to counsel and his Fourteenth

Amendment right to due process because on the day prior to Mr. Platel's testimony at trial, the

investigating officer in the case went to Mr. Platel's home and questioned him, outside the

presence of counsel, as to whether he knew the whereabouts of Mr. Bilbay, a witness to the

homicide.  Mr. Platel asserts that he told the officer that he did not know where Mr. Bilbay

resided, but that his attorney could give him the address.  Mr. Platel further alleges that the

prosecutor then used this response to imply to the jury that Mr. Platel had concealed Mr. Bilbay's

whereabouts from the officer, thereby attacking the credibility of both Mr. Platel and Mr. Bilbay.

Magistrate Judge Caracappa found each of these claims to be procedurally defaulted

because they were not presented for consideration to the state courts.  In his third objection to the

Report and Recommendation, Mr. Platel argues that neither of these claims are procedurally

defaulted.  In his fifth and sixth objections, Mr. Platel argues that each of these claims should

have been considered on their merits and found to be credible.

The doctrine of procedural default is closely related to the requirement that petitioners

exhaust state remedies before making habeas claims.  <u>Cristin v. Brennan</u>, 281 F.3d 404, 410 (3d

Cir. 2002).  The exhaustion requirement is set forth in the Anti-Terrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), which precludes a federal court from granting a writ of habeas

corpus on behalf of a person in custody unless the individual has exhausted the remedies

available in the courts of the State.  28 U.S.C. § 2254(b)(1)(A).  Under AEDPA, "an applicant

shall note be deemed to have exhausted the remedies available in the courts of the State . . . if he

has the right under the law of the State to raise, by any available procedure, the question

presented."  28 U.S.C. § 2254(c).

13

After reviewing the opinion of the Superior Court of Pennsylvania with respect to Mr. Platel's appeal, as well as the opinion of that same court respecting the denial of Mr. Platel's petition for relief under the Pennsylvania Post-Conviction Relief Act, the Court concludes that Mr. Platel did not present either of these claims to the State court, and has thereby failed to exhaust the available remedies.  For this reason, the Court concludes that Judge Caracappa did not err in concluding that Mr. Platel's first and second claims for habeas relief are barred by the doctrine of procedural default.  Moreover, because the Court affirms that consideration of these claims is so barred, it is not necessary to analyze the merits of these claims.

      D.      **Objection IV - Subpart Two of Mr. Platel's Fourth Claim is not Procedurally Defaulted**

In his fourth claim for habeas relief, Mr. Platel argues that his trial counsel was ineffective for a variety of different reasons, including that counsel (1) failed to provide reasonable effective assistance as a result of a lack of pretrial preparation, skill and experience; (2) failed to reasonably develop evidence concerning Mr. Platel's lack of knowledge of his wife's pregnancy by failing to submit the birth certificate of the child in question and certain medical records of Rebecca Platel which would have demonstrated that she was not aware of the pregnancy until after the homicide, and failed to call Cynthia Thornton, who had information as to when Rebecca Platel learned of the pregnancy, as a witness at trial; (3) failed to call Keith Bleil as a witness, who would have testified that Mr. Platel did not go to Mr. Johnson's home with any intent to harm him, but rather only to check on Mr. Bilbay's absence from work that day; (4) failed to preserve his request for a jury instruction that the police did not preserve the recorded statements of the calls made by Mr. Platel and Mr. Bilbay to 911 to report the incident;

(5) failed to object to the instruction that the trial court provided concerning the presumption of malice; and (6) failed to develop the defense that the accidental discharge of the firearm was not the cause of Mr. Johnson's death, but rather that Mr. Johnson died due to the negligence of the emergency medical treatment personnel.  Mr. Platel asserts that these failures and inaction denied him to his right to effective assistance of counsel.

A review of the appellate state court decisions reveals that while Mr. Platel asserted an ineffective assistance of counsel claim in his state court appeal and post-conviction relief petitions, he did not present all of the bases stated in his present petition relating to this claim  to the state court.  Thus, in preparing her report, Magistrate Judge Caracappa divided the claims into categories, and concluded that the assertions regarding the evidence of Rebecca Platel's pregnancy were procedurally defaulted.  In his Objection, Mr. Platel asserts that this was error because the assertions regarding the pregnancy were simply the presentation of new or additional facts in support of the habeas petition, and that the substance of the claim was presented to the state court.

The Court finds that Magistrate Judge Caracappa did not err with respect to this portion of Mr. Platel's ineffective assistance of counsel claim.  The requirement that a petitioner exhaust administrative remedies at the state level before an issue can be considered by a federal court is a doctrine that reflects a policy of federal-state comity.  Picard v. Connor, 404 U.S. 270, 275 (1971).  The purpose of the doctrine is to allow a State court an "initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Id.  In this case, the Pennsylvania Superior Court separately considered each of the arguments Mr. Platel made regarding the claim that his trial counsel was ineffective.  Thus, had it been presented with Mr. Platel's theory that

15

his wife's pregnancy should have been further explored by trial counsel, the assertion would have been analyzed as a separate claim.  As such, it would have been improper for Magistrate Judge Caracappa to consider this argument as a separate ineffective assistance of counsel claim and consequently conclude that the claim was procedurally defaulted pursuant to the terms of Section 2254(b).  For these reasons, the Court rejects these three objections, and concludes that this portion of the Report and Recommendation will be adopted.

     E.      **Objection No. VII – Judge Caracappa Erred by not Granting the Writ as to the Third Claim for Relief**

In his third claim for relief, Mr. Platel asserts that his conviction for first degree murder was not supported by sufficient evidence, thereby violating his rights under the Fourteenth Amendment.  Mr. Platel argues that Magistrate Judge Caracappa erred in not granting the writ with respect to this claim because (1) there was not citation to any parts of the trial transcript supporting the conclusion that there was sufficient evidence that Mr. Platel had an intent to kill Mr. Johnson; and (2) the Report and Recommendation fails to address a "critical flaw" in the Pennsylvania Superior Court's factual finding and analysis.  Objection at 11.  Mr. Platel specifically argues that the finding that the trial transcript does not support the court's factual finding that immediately upon learning that Mr. Johnson had given Rebecca Platel a ride home from the day care facility where both families' children attended, Mr. Platel retrieved his weapon and drove to the victim's apartment.  Id.

Section 2254(d) of AEDPA states that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the

16

adjudication of the claim . . . resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."  28

U.S.C. § 2254(d).  In turn, Section 2254(e)(1) states that "[i]n a proceeding instituted by an

application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State

court, a determination of a factual issue made by a State court shall be presumed to be correct."

28 U.S.C. § 2254(d).  Unless a district court finds a failure in factual findings that would impugn

the integrity of the entire proceeding, a district court judge must defer to state appellate court

fact-finding.  Rolan v. Vaughn, 445 F.3d 671, 680 (3d Cir. 2006).

In this case, the factual finding in question by the Pennsylvania Superior Court is the

following:

> The Commonwealth's case comprised testimony that, on the morning of
> September 2, 1993, [Mr. Platel's] wife told [Mr. Platel] that she had just received
> a ride home from the victim, who would return her home whenever the two
> dropped off their children at daycare at the same time. [Mr. Platel], who had in the
> past made crude, but seemingly comical, remarks in public that he suspected an
> affair between his wife and the victim, retrieved his semi-automatic .380 caliber
> pistol from his bedroom and drove to the victim's nearby apartment.

Commonwealth v. Platel, No. 1885 EDA 1999 (Pa. Super. Ct. 2001) at 3.  A review of the record

confirms that there was some testimony that Mr. Platel had previously engaged in apparent

comical conversation about a suspected affair between Mrs. Platel and Mr. Johnson, and that, on

occasion, Mr. Johnson was offended by these comments.  T. Shutt Testimony, Apr. 26, 1999 Tr.

at 134:18-25; 135:1-25; 136:1-6.  There is also testimony that on the morning of the homicide,

Mrs. Platel received a ride home from the day care center from Mr. Johnson and, upon returning

to her home, told Mr. Platel about it.  R. Platel Testimony, Apr. 28, 1999 Tr. at 16:1-3; E.Platel

Testimony, Apr. 28, 1999 Tr. at 141:18-20.  The testimony at trial, however, does not support a

finding that Mr. Platel retrieved the gun from his bedroom before he left the home on September 2, 1993, but rather suggests that the gun was kept in Mr. Platel's truck at that time.  R. Platel Testimony, Apr. 28, 1999 Tr. at 36:20-25.

Given this examination of the testimony, the Court concludes that the discrepancy with respect to the location of the gun on the morning of the shooting does not call into question the integrity of the entire trial.  It is undisputed that Mr. Platel had the gun in his possession when he went to Mr. Johnson's home on the morning of September 2, 1993.  The remainder of the testimony is accurate and was presented to a jury for its evaluation based upon the perceived credibility of the witnesses and other evidence presented.  At most, the factual error as stated was harmless, and does not suggest that this Court ignore the fact finding of the State appellate court with respect to the sufficiency of the evidence claim.

Mr. Platel further argues that Magistrate Judge Caracappa "did not address the fact that both Edward Platel and William Bilbay, who resided with [Mr. Johnson], gave testimony that was consistent with an accidental shooting," and that the prosecutor inaccurately argued to the jury that Mr. Platel knew about Rebecca Platel's pregnancy before the incident occurred. Objection at 12.  In making this argument, Mr. Platel asserts that there was not a factual basis from which a rational juror could have found sufficient evidence to find him guilty of first degree murder.[11]

---

[11]  Mr. Platel further argues that Magistrate Judge Caracappa failed to address, in the context of the sufficiency of the evidence claim, the prosecutor's inaccurate argument to the jury that Mr. Platel knew his wife was pregnant at the time he shot Mr. Johnson.  Objection at 12.  As discussed above, Mr. Platel's claim for prosecutorial misconduct is procedurally defaulted and cannot be addressed by this Court.  In the context of the sufficiency of the evidence claim, Mr. Platel effectively asks the Court to conclude that absent this information, the jury would have acquitted him.  However, given the other evidence and deferring to the reasoning of the

In the Report and Recommendation, Magistrate Judge Caracappa ably noted that the standard for reviewing a claim relating to the sufficiency of evidence requires a court to view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Report and Recommendation at 10.  With respect to the remainder of the testimony that Mr. Platel suggests must lead to a granting of the writ, Magistrate Judge Caracappa's conclusion that Mr. Platel "fails to explain why his view of the facts leads to the only possible rational conclusion" is accurate.

Moreover, Mr. Platel ignores some important testimony that was also presented to the jury for its consideration.  For example, the Medical Examiner for the City of Philadelphia testified that after reviewing the autopsy report which summarized Mr. Johnson's fatal injuries, he concluded that Mr. Johnson suffered two gunshot wounds, both of which entered Mr. Johnson's body from the back.  Testimony of Dr. Mirchandani, Apr. 26, 1999 Tr. at 69:11-12; 17-24; 71:4-7.  There was also testimony that at the time Mr. Johnson was shot, he was sitting on a sofa, watching television.  Testimony of W. Bilbay, Apr. 28, 1999 Tr. at 54:7-8.  These pieces of testimony are important because they constitute evidence from which a rational juror could have concluded that the injuries were inflicted with an intent to kill. Therefore, Mr. Platel's seventh objection is rejected and the finding that Mr. Platel's third claim for relief must be denied on its merits shall be adopted.

_____

Pennsylvania Superior Court, the Court declines to so conclude.

F.     **Objection No. VIII - Magistrate Judge Caracappa Erred in Declining to Grant the Writ Respecting Mr. Platel's Fourth Claim for Relief**

As discussed above, in his fourth claim for relief, Mr. Platel argues that his conviction is constitutionally infirm because he was denied effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments.  Mr. Platel grounds his ineffective assistance of counsel claims on argument that his trial counsel (1) failed to provide reasonable effective assistance as a result of a lack of pretrial preparation, skill and experience, exemplified by his failure to investigate the possibility that someone had tampered with the gun used in the killing; (2) failed to reasonably develop evidence concerning Mr. Platel's lack of knowledge of his wife's pregnancy by failing to submit the birth certificate of the child in question and certain medical records of Rebecca Platel which would have demonstrated that she was not aware of the pregnancy until after the homicide, and failed to call Cynthia Thornton, who had information as to when Rebecca Platel learned of the pregnancy, as a witness at trial; (3) failed to call Keith Bleil as a witness, who would have testified that Mr. Platel did not go to Mr. Johnson's home with any intent to harm him, but rather only to check on Mr. Bilbay's absence from work that day; (4) failed to preserve his request for a jury instruction that the police did not preserve the recorded statements of the calls made by Mr. Platel and Mr. Bilbay to 911 to report the incident; (5) failed to object to the instruction that the trial court provided concerning the presumption of malice; and (6) failed to develop the defense that the accidental discharge of the firearm was not the cause of Mr. Johnson's death, but rather that Mr. Johnson died due to the negligence of the emergency medical treatment personnel.  The second of these claims having been denied due to a procedural default, the Court will now address Magistrate Judge Caracappa's findings regarding

20

the merits of the remaining ineffective assistance of counsel claims.

With respect to the claim that counsel's lack of skill and trial preparation that is demonstrated by the failure to investigate the possibility that the gun involved in the killing had been tampered with by the police, Magistrate Judge Caracappa found this claim to be meritless because counsel for Mr. Platel did call his concern to the attention of the court, and the police officer witness was recalled and questioned about counsel's concerns.

Mr. Platel does not challenge the Report and Recommendation on this basis, but rather argues that Magistrate Judge Caracappa failed to address his argument that defense counsel erred in failing to question Rebecca Platel about the fact that she witnessed the gun used in the killing accidentally discharging in her home.  Objection at 14.  A careful review of Mr. Platel's Amended Petition reveals that this argument does not appear to be clearly articulated, but rather is implied by the inclusion of an affidavit of Rebecca Codespoti (formerly Rebecca Platel) in which Ms. Codespoti attests that she witnessed the weapon accidentally discharging and would have testified as such had she been asked to, and that this information had been given to Mr. Platel's investigator.[12]  Platel Corr. App. at Ex. 10, ¶¶ 3, 5.

The Court echoes the standard relied upon by Magistrate Judge Caracappa that in reviewing a claim for ineffective assistance of counsel, a court must determine whether, in light

_____

[12]  The Court observes that much of the information upon which this objection is based arises from the documents in the Corrected Appendix which Mr. Platel moved to have included in the record after the Report and Recommendation was issued.  The Court also notes that Mr. Platel asserts that Magistrate Judge Caracappa did not address the fact that Mr. Bilbay and Mr. Platel gave statements to the police that would have rebutted the prosecution's argument that they had fabricated their testimony.  This argument makes reference to Document No. 19 of Mr. Platel's Reply in Support of His Amended Petition.  However, the Reply in Support of the Amended Petition has only 18 exhibits, and the Court is uncertain as to what documents the Petitioner is referring with respect to these statements.

of all the circumstances, the identified acts or omissions were outside the "wide range of professionally competent assistance."  Strickland v. Washington, 466 U.S. 668, 695 (1984).  At trial, Rebecca Platel's testimony was primarily about her relationship with Mr. Platel and Mr. Johnson, and whether and what Mr. Platel did to ensure that the weapon in question was "safe" so that an accident involving the children in the home could be avoided.  R. Platel, Apr. 28, 1999 Tr. at 8-43.  A great deal of Mrs. Platel's direct testimony addressed whether there was any intimate relationship between her and Mr. Johnson and specifically focused on the physical features of the child Mrs. Platel delivered as a result of the pregnancy that the prosecution argued had motivated the killing.  R. Platel, Apr. 28, 1999 Tr. at 17:22-25; 19-20; 21:1-10.  Given the prosecution's theory of motivation, this line of questioning appears to have been an adequate and competent trial strategy.

The Court acknowledges that the defense theory that the shooting was accidental would certainly have been consistent with the testimony Ms. Codespoti claims that she would have given.  However, it is far from clear to this Court that had that testimony been conveyed to the jury, the outcome of its deliberations would have differed.  Moreover, Mrs. Platel testified at length on cross-examination that Mr. Platel repeatedly checked the gun to ensure that it was safe to have in the home, and that Mrs. Platel had asked Mr. Platel to stop storing the gun in the home so that it would be inaccessible to the children.  R. Platel, Apr. 28, 1999 Tr. at 27-37.  Given this testimony, it would not have been an unreasonable strategy to have avoided presenting the fact that the gun had misfired, as that information would have contradicted Mrs. Platel's previous

testimony.[13]  The Court further notes that trial counsel did elicit evidence from experts with

respect to the possible malfunction of the gun, thereby supporting the defense theory of accident.

See generally R. Catherman, Apr. 27, 1999 at 82-135; G. Fassnacht, Apr. 29, 1999 Tr. at 4 - 87.

As such, the Court does not find that the omission of this information fell outside the wide realm

of possible trial strategy, and sees no reason to reject Magistrate Judge Caracappa's finding with

respect to this portion of the ineffective assistance of counsel claim.

Mr. Platel next argues that defense counsel's failure to call Keith Bleil as a witness

further supports his ineffective assistance of counsel claim.  Although Magistrate Judge

Caracappa found that this testimony would have been cumulative to testimony that was elicited

from William Bilbay, Mr. Platel disagrees, arguing that because Mr. Bilbay was a friend of Mr.

Platel, Mr. Bleil's testimony would have provided independent corroboration of Mr. Bilbay's

testimony.

The affidavit Mr. Platel submits from Mr. Bleil states the following:

At approximately 7:45 AM September 29th 1993 I received a phone call from
William Bilbay telling me not to stop by and pick him up for work.  He had a
personal problem and wouldn't work that day.  He asked me to call Edward Platel
whom we were working with and relay the message, which I did.  Edward Platel
said he would stop by to check on William Bilbay to see if he could do anything
and make a few calls to try to get someone else to work with us that day.

---

[13]  The Court also notes that had this testimony been presented, counsel would have had
to overcome the obvious obstacle of explaining how a gun that had previously fired accidentally
could have done so twice.  Although Mr. Platel presents a transcript from an episode of the
television news show "Sixty Minutes" that he claims would have supported this theory, it is not
unreasonable for counsel to have taken a different trial strategy to attempt to refute the allegation
that Mrs. Platel was having an affair with the victim.  Had that strategy been successful, Mr.
Platel's motivation would have been eradicated, thereby supporting the defense theory of
accident.

Petitioner's Corrected App. at Ex. 9.  At the trial, William Bilbay testified that on the morning of September 29, 1993, he called Mr. Bleil to inform him that he would not be able to work that day because he had personal problems.  W. Bilbay, Apr. 28, 1999 Tr. at 51:15-20.  Mr. Bilbay admitted that he did not, in fact, have any personal problem, but that he had planned to take the day off, as had Mr. Johnson (the victim), who had also called out from work.  W. Bilbay, Apr. 28, 1999 Tr. at 51:21-23; 52:6-7.  Mr. Bilbay testified that he and Mr. Johnson had planned to take time off and  "mess around for the day."  W. Bilbay, Apr. 28, 1999 Tr. at 50:4-6.  Mr. Bilbay testified that he considered himself to be a good friend of Mr. Johnson.  W. Bilbay, Apr. 28, 1999 Tr. at 48:18-20.

The nature of this testimony refutes the need to have independent corroboration of Mr. Bilbay's testimony.  The substantive content of Mr. Bilbay's testimony was essentially the same as Mr. Bleil's would have been, and although Mr. Platel asserts that the jury must have seen Mr. Bilbay as a witness favorable to Mr. Platel, thereby calling into question his credibility, the fact that Mr. Bilbay lived with Mr. Johnson, was a good friend of his and planned to take the day off to spend it with him suggests otherwise.  The Court agrees with the finding of Magistrate Judge Caracappa and, therefore, adopts the substance and reasoning of the Report and Recommendation with respect to this portion of the ineffective assistance of counsel claim.

Mr. Platel next asserts that Magistrate Judge Caracappa did not address his assertion that trial counsel was ineffective because he failed to file a motion to suppress the statement that a detective took from Mr. Platel during an evening recess at the trial regarding the whereabouts of Mr. Bilbay.  The Court notes that this claim was not presented to the Pennsylvania Superior

24

Court in either the direct appeal or the PCRA petition filed by Mr. Patel and is, therefore, barred by the doctrine of procedural default, which is discussed above.

Mr. Platel also argues that trial counsel was ineffective by failing to request "missing evidence" instructions to the jury, which would have advised that it was the fault of the investigating officer that the tapes and transcripts were not produced.  In the Report and Recommendation, Magistrate Judge Caracappa, after stating the legal standard required to assess whether a missing evidence charge is necessary,[14] found that the transcripts of the 911 calls would have amounted to cumulative evidence because the urgency in Mr. Platel's voice during the 911 call was adequately conveyed by the testimony of Mr. Bilbay, who stated that Mr. Platel cried out "Oh, my God, I shot Brian" when the incident occurred.

The Court agrees that this testimony would fairly convey the point that Mr. Platel was upset, and that such a jury instruction regarding the missing tapes was therefore not warranted.  Moreover, the Court notes that the transcript of the charging conference suggests that trial counsel proposed a special instruction with respect to the absence of the 911 tapes, and that the proposal was denied.  Apr. 30, 1999 Tr. at 12:16 – 14:19.  Thus, trial counsel did request some instruction regarding the absence of the tapes.  For these reasons, the Court adopts the reasoning and conclusion as set forth in the Report and Recommendation with respect to this assertion of the ineffective assistance of counsel claim.

Mr. Platel next asserts that Magistrate Judge Caracappa failed to address his assertion that

---

[14]  As stated, such a charged may be given to a jury only if: (1) the missing item is only available to the party who fails to produce it; (2) the item contains or shows special information which is material to the issue; and (3) the item would not be merely cumulative.  Pa. Standard Criminal Jury Instr. at § 3.21B.

trial counsel was ineffective relating to the loss or destruction of the clothing that the victim was wearing when he was shot.  <u>Objection</u> at 15.  The loss or destruction of the clothing is presented as an issue supporting the argument that Mr. Platel is entitled to a new trial, but there is no assertion that trial counsel was ineffective relating to this loss.  The only link between this issue and the ineffective assistance of counsel claim is that within the body of the Amended Petition, at paragraph 35, Mr. Platel states that

> The police also lost or destroyed the clothes of the victim.  The present case became at least partially a battle of the experts regarding the accidental discharge of the firearm.  The path of the two bullets that struck Brian Johnson became critical to this dispute.  The experts disagreed as to which wounds were the exit or entrance wounds.  Again the jury may have drawn the negative inference from perceived failure of Edward Platel to produce the missing or destroyed clothes.

<u>Amended Petition</u> at ¶ 35.  Assuming that Mr. Platel is arguing that counsel was ineffective for failing to request a missing evidence instruction with respect to this issue, the Court finds that the expert testimony presented at trial adequately addressed any issue with respect to the path of the bullets, and that this evidence would have also been cumulative, mandating no instruction.

Mr. Platel also argues that trial counsel's performance respecting the jury instructions was ineffective because counsel failed to object to the jury instruction concerning inference as to malice, and that Magistrate Judge Caracappa erred in concluding that "the instruction makes clear that malice may be inferred only where a deadly weapon is both pointed at a vital part of the human body and used."  <u>Report and Recommendation</u> at 15.

The instruction at issue here was read to the jury as follows:

> You may infer malice from certain kinds of conduct, for example, if you believed that a person or defendant intentionally pointed a deadly weapon at a vital part of the human body in such a manner that was calculated or likely to cause death or

serious bodily injury, you may infer that the weapon was *used* with malice, but
whether or not you do is entirely up to the jury to decide.

April 30, 1999 Tr. at 43 (emphasis added).  Mr. Platel argues that allowing the jury to infer that if

they found a gun was pointed at a vital part of Mr. Johnson's body it was then used with malice

was improper and should have given rise to an objection by trial counsel.  The Court disagrees.

In the Report and Recommendations, Magistrate Judge Caracappa states that "[t]he

instruction makes clear that malice may be inferred only where a deadly weapon is both pointed

at a vital part of the human body and used, and thus it was adequate."  Report and

Recommendation at 15.  Under Pennsylvania law, a jury "may infer the requisite malice to

establish first-degree murder from the defendant's use of a deadly weapon upon a vital part of the

victim's body."  Commonwealth v. Ragan 743 A.2d 390, 400 (Pa.1999).  In this case, it is

undisputed that Mr. Platel actually shot Mr. Johnson in the neck and that the shot severed Mr.

Johnson's aorta.  Thus, as Magistrate Judge Caracappa notes, the instruction would not have

allowed the jury to infer malice from Mr. Platel merely pointing the gun at Mr. Johnson.

Because the gun in this case was used, the Court agrees with the findings of Magistrate Judge

Caracappa, and the portion of the Report and Recommendation relating to this claim shall be

adopted.

Mr. Platel finally argues that Magistrate Judge Caracappa erred in not finding that trial

counsel was ineffective for failing to raise a "negligent care" defense and argue that the actual

cause of Mr. Johnson's death was the negligence of emergency medical personnel.  The Court

disagrees with this objection.  As stated in the Report and Recommendation, Pennsylvania law

dictates that "a defendant's actions are the legal cause of death if they are a direct and substantial

27

factor in bringing it about." <u>Commonwealth v. Paquette</u>, 301 A.2d 837, 839 (Pa. 1973). In this case, there is no question that it was foreseeable to Mr. Platel that once Mr. Johnson was shot, he might not have been able to obtain the medical treatment necessary in sufficient time to save his life. As previously stated, counsel was not ineffective for failing to put forth a defense theory that was without merit. For these reasons, the Court rejects Mr. Platel's objection with respect to this claim of ineffective assistance of counsel and adopts the conclusion set forth in the Report and Recommendation.

G.   **Objection No. IX - The Magistrate Judge Erred in Failing to Grant Habeas Relief with Respect to the Fifth Claim for Relief**

In his fifth claim for habeas relief, Mr. Platel argues that his conviction is constitutionally infirm and, therefore, warrants a finding of a mistrial because the police failed to preserve the 911 tapes and transcripts, as well as the clothing of the victim, thereby preventing Mr. Platel from preparing a fair and adequate defense at trial. As discussed above, Magistrate Judge Caracappa found this claim to be barred from consideration due to the doctrine of procedural default. The Report and Recommendation specifically found that although Mr. Platel raised this claim with the Pennsylvania Superior Court in the direct appeal of his case, that Court found the claim to be waived because trial counsel did not move for a mistrial on these grounds and that Mr. Platel had not included this failure as one of his grounds asserting a constitutional violation based on ineffective assistance of counsel. <u>Report and Recommendation</u> at 7.

A federal court is without jurisdiction to consider an issue of federal law on review from a judgment of a state court if the state court judgment "rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision."

28

Harris v. Reed, 489 U.S. 255, 260 (1989).  This doctrine applies to state decisions in which federal claims are declared to have been forfeited for violation of state procedural rules where the state court opinion contains a 'plain statement' that its decision rests upon adequate and independent state grounds, and does apply to habeas proceedings brought pursuant to 28 U.S.C. § 2254.  Harris, 489 U.S. at 261-62.  This bar to jurisdiction may only be lifted if a habeas petitioner can show "cause" for the default and "prejudice attributed thereto" or demonstrate that the failure to consider the federal claim will result in a "fundamental miscarriage of justice." Harris, 489 U.S. at 262.

    In this case, in declining to consider Mr. Platel's claim regarding a mistrial, the Pennsylvania Superior Court stated that because the trial record showed that trial counsel never moved for a mistrial and because Mr. Platel did not include the omission of such a request as a basis for his claim of ineffective assistance of counsel, the claim had been waived. Commonwealth v. Platel, No. 1885 EDA 1999 (Pa. Super. Ct., May 11, 2001) at 8.  Thus, the court actually relied on the state procedural bar in deciding this particular issue and, absent a showing of cause and prejudice or a fundamental miscarriage of justice, the claim may not be considered by this Court.

    The only cause that Mr. Platel has presented for the omission of a motion for a mistrial on these grounds is that his trial counsel was ineffective.  For the reasons discussed above with respect to this issue, the Court concludes that this assertion is not sufficient.  Moreover, the Court has, earlier in this Memorandum, concluded that the absence of this evidence does not present a fundamental miscarriage of justice because there was alternative evidence presented at trial that would render each of these pieces of evidence as complementary, rather than critical, and

because with respect to the missing clothing, there is no assurance that the evidence would have been helpful to Mr. Platel.  Thus, because the state basis for rejecting that claim was adequate and independent, and because the Court sees no basis for cause or prejudice or the implication of a fundamental miscarriage of justice regarding this fifth claim for relief, Mr. Platel's objection with respect to this claim is rejected and the finding reflected in the Report and Recommendation is adopted.

      H.      **Objection No. 10 – Magistrate Judge Caracappa Erred in Not Granting Habeas Relief on Mr. Platel's Sixth Claim for Relief**

In his sixth claim for relief, Mr. Platel asserts that his conviction is constitutionally infirm because the trial court admitted testimony that Mr. Platel had an affair with an underage woman, thereby violating his Fourteenth Amendment rights.

At trial, a witness by the name of Tamara Shutt, who was then 22 years old, was questioned on re-direct examination whether she had a relationship with Mr. Platel in 1993.  T. Shutt, Apr. 26, 1999 Tr. at 153:14-16.  Ms. Shutt replied "yes" to the question, and defense counsel objected.[15]  Apr. 26, 1999 Tr. at 153:17-25.  The trial court had allowed this line of questioning because counsel had, apparently, called into question whether Ms. Shutt had any bias for or against Mr. Platel.  Apr. 26, 1999 Tr. at 153:3-10.  The trial court then stated that "[t]he question is, is this witness testifying because she has some personal relationship with the defendant on trial or no; that's the issue."  Apr. 26, 1999 Tr. at 154:1-4.

The claim that this exchange warranted a finding that a new trial was in order was

---

[15]  Although it is not stated in the record, Mr. Platel argues that the grounds for this objection was that a pretrial order had been given respecting questioning about this relationship. Amended Petition at ¶ 47.

presented to the Pennsylvania Superior Court in Mr. Platel's PCRA petition.  In rejecting the

argument, the PCRA court concluded that "we do not believe that admission of this passing

reference to an earlier relationship was error requiring grant of a new trial in light of the fact that

this evidence actually supports the existence of animosity on the part of Ms. Shutt, giving her

motivation to testify against [Mr. Platel]." Commonwealth v. Platel, No. 2344 EDA 2002 (Pa.

Superior Ct., July 1, 2003) at 11.  The court then concluded that the prejudicial impact of such a

statement served to swing in both directions and did not supply grounds for a new trial because

the evidence of Mr. Platel's guilt was overwhelming and the prejudicial effect of the statement

was so insignificant that it could not have contributed to the verdict.  Id.

 The Court agrees that the testimony by Ms. Shutt does amount to no more than a passing

reference, the absence of which would not cause the court to conclude that no rational juror could

have found Mr. Platel guilty of the crime charged.  As such, the Court rejects this objection and

adopts the Report and Recommendation with respect to this claim.

CONCLUSION

 Having considered each of the objections to the Report and Recommendation filed by

Magistrate Judge Caracappa, the Court concludes that the objections are, for the reasons

discussed above, without merit.  Therefore, the Report and Recommendation will be adopted in

full.  An appropriate Order follows.

S/Gene E.K. Pratter
Gene E.K. Pratter
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDWARD PLATEL,** | : | **CIVIL ACTION** |
| **Petitioner,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **RAYMOND COLORAN,** | : | |
| **THE DISTRICT ATTORNEY OF THE** | : | |
| **COUNTY OF PHILADELPHIA, AND** | : | |
| **THE ATTORNEY GENERAL OF** | : | |
| **THE COMMONWEALTH OF PA,** | : | |
| **Respondents.** | : | **No. 04-1000** |

**O R D E R**

**AND NOW**, this 15th day of August, 2006, after careful review of the Report and

Recommendation of United States Magistrate Judge Linda K. Caracappa (Docket No. 24) and the

Objection and Response thereto (Docket Nos. 26, 27), it is **ORDERED** that:

1. The Report and Recommendation is **APPROVED** and **ADOPTED**;

2. The Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is

   **DENIED**; and

3. A certificate of appealability is **NOT GRANTED**.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge